## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**BARBARA FRAZIER**                                                    **PLAINTIFF**

**v.**                          **CASE NO. 5:07-CV-00184 BSM**

**ARKANSAS DEPARTMENT OF
CORRECTION; T.A. MOORE, individually
and in his official capacity as an officer of the
Arkansas Department of Correction; and
CHRISTOPHER WEST, individually and in
his official capacity as an officer of the Arkansas
Department of Correction**                                  **DEFENDANTS**

### ORDER

Before the court is the second motion for summary judgment filed by defendants

Arkansas Department of Correction ("ADC") and T.A. Moore ("Moore") (collectively,

"defendants"). Plaintiff Barbara Frazier ("Frazier") has responded. For the reasons set forth

below, the motion is granted as stated herein.

### I. FACTS

The court set forth the factual background of this case in its order dated October 23,

2008, and will not restate it here. *See* Doc. No. 38. For purposes of this motion, the

following facts are undisputed: ADC is a state agency for the State of Arkansas. *See* Doc.

No. 60, plaintiff's response to defendants' statement of undisputed facts ("Stmt. of Facts"),

¶ 1. Moore is a sergeant for the Diagnostic Unit. *Id*. at ¶ 3. Frazier filed a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 7,

2008, alleging that she was suspended in retaliation for filing a lawsuit in July 2007. *Id*. at

¶ 5.  On July 11, 2008, Frazier was issued a right to sue letter on her July 7, 2008, charge of discrimination.  *Id*. at ¶ 6.  Frazier did not file a charge of discrimination after her termination on August 27, 2008.  *Id*. at ¶ 7.

Frazier was placed on Family Medical Leave Act ("FMLA") leave on April 17, 2008, for an injury she sustained at work.  *Id*. at ¶ 8.  In her deposition taken on April 25, 2008, in conjunction with this lawsuit, Frazier testified that she told her mental health provider that she felt that she needed to "take her gun to work and shoot everyone."  *Id*. at ¶ 9.  Frazier also testified in her deposition that she felt like hurting Moore and that she would like to shoot him.  *Id*. at ¶ 10.  Warden Toney notified Frazier on June 19, 2008, that she would need a written statement from her doctor indicating that she was able to perform her job duties prior to returning to work.  *Id*. at ¶ 11.

## II.  PROCEDURAL BACKGROUND

Frazier filed a complaint for "declaratory, injunctive, and monetary relief" on July 18, 2007, against the ADC and against Moore and Christopher West, in their official and individual capacities.   Therein, she expressly alleged race discrimination, gender discrimination, and retaliation claims in violation of 42 U.S.C. § 1981,  42 U.S.C. § 1983, the Due Process Clause, and the Equal Protection Clause.  Frazier also alleged violations of the Arkansas Civil Rights Act ("ACRA"), breach of contract, battery, outrage, and violation of the Arkansas Administrative Procedures Act.  She sought back pay and benefits, compensatory damages, punitive damages, costs, and attorney's fees.

On September 5, 2008, Frazier moved to amend the complaint to add Warden Toney as a defendant and to add a claim of retaliatory discharge.  On September 22, 2008, the court permitted Frazier to amend her complaint solely to add an unlawful discharge claim.

On October 23, 2008, defendants' first motion for summary judgment was granted in part and denied in part.  Summary judgment was granted as to the following:

(1) All of plaintiff's claims against defendant West in his individual capacity;

(2) Plaintiff's 42 U.S.C. § 1981, 42 U.S.C. § 1983,[1] and parallel ACRA claims for monetary damages against defendants Moore and West, in their official capacities, and defendant ADC;

(3) Plaintiff's 42 U.S.C. § 1983 and parallel ACRA disparate treatment gender discrimination claims;

(4) Plaintiff's 42 U.S.C. § 1983 and parallel ACRA disparate treatment race discrimination claim based upon the following: (a) her assignment to the security tower, and (b) the metal detector allegations;

(5) Plaintiff's 42 U.S.C. § 1983 and parallel ACRA retaliation claims with regard to the following: (a) her assignment to the security tower; (b) the denial of her request for catastrophic leave; (c) the April 16, 2008, incident involving Lt. Gregg Moore; and (d) the July 25, 2007, incidents involving Lt. Straughn;

(7) Plaintiff's equal protection claim;

(8) Plaintiff's procedural due process claims to the extent she relies on a property interest in her job or harm to her reputation as the liberty interest violated;

---

[1]  The court's rulings with regard to Frazier's § 1983 claims apply to her § 1981 claims because "[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998).

(9) Plaintiff's claim under the Administrative Procedures Act;

(10) Plaintiff's breach of contract claim;

(11) Plaintiff's battery claim; and

(12) Plaintiff's claim of outrage arising from the her allegations that (a) West allegedly spread a rumor about her, specifically stating that she had "good p—y."; (b) that Toney did not take her allegations of sexual harassment seriously; and (c) that following an Internal Affairs investigation of her allegations, an Internal Affairs investigator that plaintiff believed to be named Artie Moore told her that she "was telling a god---- lie."

The court also ruled that defendant Moore was not entitled to qualified or statutory immunity in his individual capacity.

At that point, the remaining claims remained viable:

(1) Plaintiff's claims for injunctive relief under § 1983 and parallel ACRA provisions against defendants Moore and West, in their official capacities, and defendant ADC;

(2) Plaintiff's 42 U.S.C. § 1983 quid pro quo sexual harassment and parallel ACRA claims;

(3) Plaintiff's 42 U.S.C. § 1983 and parallel ACRA hostile work environment sexual harassment claims;

(4) Plaintiff's disparate treatment race discrimination claim based upon the following: (a) her suspension and termination, and (b) the treatment of the claims of Stout and Aldridge in comparison to the treatment of her claim;

(5) Plaintiff's 42 U.S.C. § 1983 and parallel ACRA retaliation claims with regard to her suspension and termination;

(6) Plaintiff's substantive due process claim;

(7) Plaintiff's procedural due process claim to the extent that she contends that defendants violated her procedural due process rights by failing to adequately investigate her sexual harassment complaint; and

(8) Plaintiff's claim of outrage arising from the alleged incidents with Troy Moore.

The court did not address any Title VII claims, assuming that Frazier's complaint could be construed as making a Title VII claim, although such a claim was not explicitly stated.

On December 4, 2008, Frazier filed a motion to clarify as to whether the order dated September 22, 2008, should be read to direct the clerk to file the proposed first amended complaint, but striking from that complaint issues and claims not permitted by the court, or if she should draft and file a new amended complaint that complies with the limitations set by the court. The court noted that pursuant to Local Rule 5.5(e), Frazier should have filed her amended complaint, taking into consideration the court's ruling on the motion to amend, within five days of the entry of the order granting leave to amend, but she failed to do so. Because the court had subsequently dismissed several of Frazier's claims, it directed Frazier to draft and file a new amended complaint including only the listed remaining claims and any other claims specifically allowed by the order. The court specifically allowed Frazier's amended complaint to include allegations of unlawful suspension without pay and discharge, including a state law claim for wrongful discharge, as well as her claims of invasion of privacy, violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and defamation. The court declined to reconsider its previous decision denying plaintiff to add Warden Toney as a defendant, and declining Frazier's request to add a breach

of contract claim, as the court had already ruled on the claim.  On December 10, 2008, Frazier filed her amended complaint.

### III.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing

sufficient to establish the existence of an element essential to its case, and on which that party

will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## IV.  DISCUSSION

A.  <u>42 U.S.C. §§ 1981 and 1983 Claims for Injunctive Relief and Parallel ACRA
Claims Against ADC</u>

Previously, the court held that Frazier's 42 U.S.C. § 1981 and §1983 claims for

monetary damages against defendant ADC were barred by sovereign immunity. *Singletary*

*v. Missouri Dep't of Corrs*., 423 F.3d 886, 890 (8th Cir. 2005); *Burk v. Beene*, 948 F.2d 489,

493 (8th Cir. 1991).  The court mistakenly stated, however, that "to the extent that Plaintiff

requests injunctive relief, said claims remain."

In *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007), the Eighth

Circuit held that the Eleventh Amendment barred suit against Arkansas State University "for

any kind of relief, not merely monetary damages."  The court stated that "under the doctrine

set forth in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), state officials

may be sued in their official capacities for prospective injunctive relief without violating the

Eleventh Amendment, the same doctrine does not extend to states or state agencies." *Id.*; *see*

*also Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (holding that the Eleventh

Amendment bars suit against agencies of the State of Arkansas, but plaintiff may seek

equitable relief against state officials acting  in their official capacities).  Therefore, all of

Frazier's 42 U.S.C. §§ 1981 and 1983 claims, including those for injunctive relief, against

defendant ADC are dismissed with prejudice.  Similarly, all of Frazier's parallel ACRA

claims against defendant ADC are dismissed with prejudice. *See* Ark. Code Ann. § 16-123-104 ("Nothing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas.").

**B.**     <u>**Retaliatory Suspension and Termination Claims Pursuant to Title VII, 42 U.S.C. § 1983, and ACRA**</u>

Defendants assert that Frazier did not timely file her amended complaint for retaliatory suspension, and as a result, that claim is now barred under Title VII. Defendants state that Frazier's right-to-sue letter was issued on July 11, 2008, but Frazier did not file her amended complaint containing her claims for retaliatory suspension and termination until December 10, 2008, more than 150 days later. Defendants also assert that Frazier did not exhaust her administrative remedies under Title VII with regard to her termination because she did not file a charge of discrimination after her termination.

Frazier admits that she did not file a charge of discrimination after her termination on August 27, 2008. She asserts, however, that the filing of the motion to amend on September 5, 2008, with an amended complaint alleging retaliatory suspension and termination appended thereto, tolled the statute of limitations. She also asserts that an exception to pursuing the EEOC administrative process exists for a charge of retaliation where there is ongoing litigation against the same employer for violations which are continuous in nature, as it would serve no useful benefit to pursue the process. Frazier further asserts that she was suffering from debilitating impairments at the times relevant to the retaliation. For these

8

reasons, Frazier contends that she should be exempted from the EEOC administrative exhaustion requirements with regard to her retaliatory suspension and termination. For purposes of this motion, the court will assume, without deciding, that Frazier appropriately exhausted her administrative remedies as to the retaliatory suspension and termination claims.

Defendants further assert that even if Frazier is allowed to proceed on her retaliation claims, she cannot establish that she was suspended or terminated in retaliation for filing a lawsuit. Retaliation claims under Title VII and 42 U.S.C. § 1983, as well as the parallel ACRA retaliation claim, are analyzed under the *McDonnell Douglas* burden-shifting framework. *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922 (8th Cir. 2007). "In order to establish a prima facie case of retaliation, the employee must produce evidence: (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Id*. (internal citations omitted). If Frazier establishes a prima facie case, the court must examine whether defendants have offered a legitimate, nonretaliatory reason for its actions and whether Frazier has presented any evidence that the explanation given is pretextual. *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1028 (8th Cir. 2004).

Defendants assert that Frazier cannot establish a causal connection between her lawsuit and her termination, which occurred over one year after the filing of her lawsuit.

Moreover, defendants assert that the record demonstrates that Frazier was never suspended.

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation. *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (internal citations omitted).  In *Kipp v. Missouri Highway Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002), the Eighth Circuit held that "the interval of two months between the complaint and [the plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link."   "The further in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes." *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 774 (8th Cir. 2003).

In support of her retaliation claim, Frazier states that, upon filing her charge of sexual harassment and her complaint, her sexual harassment charge was ignored, she "began getting job assignments which were uncommon for her position," "the assignment caused her sickness and loss of work," and she was not separated from the alleged sexual perpetrator while on duty, as is called for under ADC regulations."  The court, however, has already granted summary judgment as to Frazier's claim of retaliation with regard to her assignment to the security tower, finding that Frazier failed to demonstrate that a reasonable employee

would have found her assignment to the tower materially adverse or to demonstrate a causal connection between the filing of the complaint and her assignment to the tower.

The record indicates that Frazier filed her charge of discrimination with the EEOC on August 7, 2006.  She asserts that she was suspended from work without pay for alleged security concerns on June 23, 2008.  She was terminated on either August 27, 2008, or September 5, 2008.[2]  The court finds that Frazier has failed to demonstrate a causal link between her complaint and her suspension or termination.  Summary judgment is appropriate as to Frazier's retaliatory suspension and termination claims pursuant to Title VII and 42 U.S.C. § 1983.

Defendants also assert that Frazier was terminated for a legitimate, non-retaliatory reason.  It is undisputed that Frazier was placed on FMLA leave on April 17, 2008, for an injury she sustained at work when she tripped on gravel while walking to her car, landing on her hands and knees.  It is also undisputed that in her deposition taken on April 25, 2008, while on FMLA leave, Frazier testified that she told her mental health provider that she felt that she needed to "take her gun to work and shoot everyone."  Frazier also testified in her deposition that she felt like hurting Moore and that she would like to shoot him.

_____

[2] *See* Exhibit I, termination memorandum dated August 27, 2008, Defs.' Motion. As discussed in the court's order on the first motion for summary judgment, however, a termination letter dated September 5, 2008, was submitted by Frazier.  The contents of the letter are identical, with the exception of the September 5, 2008, effective termination date in the letter dated September 5, 2008.  *See* Exhibit 1, memo dated September 5, 2008, plaintiff's response to defendants' first motion for summary judgment (Doc. No. 33-2).

In his affidavit, Warden Toney states that he is "responsible for the safety of the employees and inmates at the Complex."  Exhibit E, Toney Aff., defendants' second motion for summary judgment ("defs.' motion").   He also states that was present at Frazier's deposition and her statements caused him "great concern for the safety and welfare of all individuals at the Pine Bluff Complex."  *Id*.

It is undisputed that Warden Toney notified Frazier on June 19, 2008, that she would need a written statement from her doctor indicating that she was able to perform her job duties prior to returning to work.  In his affidavit, Warden Toney states that he sent a letter to Dr. Shamim Malik, Frazier's treating physician at Southeast Arkansas Behavioral Health System ("SABHS"), which states:

> Ms. Frazier is currently employed as a Correctional Officer at the Diagnostic Facility.  Recently Ms. Frazier made statements about having thoughts of hurting her supervisor by shooting him.  Ms. Frazier also made statements about thinking staff was trying to poison her.
>
> As a Correctional Officer Ms. Frazier has essential tasks that require her to be armed.  As Warden I have an obligation and responsibility to ensure our facility is secure and safe for the inmates assigned and for our staff and community.  Therefore I need a written statement from you acknowledging that Ms. Frazier is not a threat to staff and can perform tasks including carrying and discharging of a firearm without placing herself, her co-workers or inmates at risk.

*Id*.; Exhibit F, Defs.' Motion.  On July 2, 2008, Dr. Malik replied, "The patient told on her last visit that she had been taking medications sometimes.  If she does not comply with

medications, she can be a danger to others and it will not be safe for her to handle guns."

Exhibit G, Defs.' Motion.

A letter dated August 14, 2008, from Dr. Malik to Toni Bradley of the ADC states:

As you are aware, Ms. Frazier is a patient at Southeast Arkansas Behavioral Health. She is being followed at this particular time by me for Schizoaffective Disorder and is currently on Lexapro 10 mg, Seroquel 20 mg, and Wellbutrin XL 150 mg.

According to information we have received, Barbara Frazier made a statement about having thoughts of hurting her supervisor by shooting him and also she made statements about thinking the staff was trying to poison her. Ms. Frazier relates that this is not a true statement. She believes that Mr. Rick Toney is trying to use her records against her. Ms. Frazier relates that she believes that Mr. Toney received her records from the state attorney. At present, Ms. Frazier is taking her medication regularly. She denies any paranoid delusions or audiovisual hallucinations. She is oriented to all three fields. She is able to think abstractly, but she reports occasional paranoid delusions. When I asked her if the staff at ADC was against her and poisoning her, she stated that she used to experience that before, but sometimes now. She denies any suicidal or homicidal ideations at this time.

It is my opinion that Ms. Frazier should remain off work at the present time on a temporary basis. It has been undecided at this point when she will be able to return to work.

We are providing Ms. Frazier with a copy of the Essential Job Function Questionnaire today.

Exhibit H, Defs.' Motion.

A memorandum dated August 27, 2008, from Warden Toney to Frazier states:

You were placed on Family Medical Leave beginning on April 17, 2008. As you know, Family and Medical leave allows "eligible" employees to take job-protected, unpaid leave, or to substitute appropriate earned leave (which you have done) for up to a total of 12 weeks. Your approved Family Medical Leave ended on July 9, 2008. You were placed on Leave Without Pay on July

13

1, 2008.  In addition, my office was notified on August 22, 2008, of your request for Catastrophic Leave being denied.

You should also know that employees who are unable to return to work and have exhausted their 12 weeks of FMLA leave in the designated "12 month period" no longer have FMLA protection of leave or job restoration.  In view of the aforementioned, and by way of this letter, I am advising you that your employment with the Arkansas Department of Correction will be Terminated effective August 27, 2008.

Upon recovery, being able to perform all the essential job functions of your position, or the essential job functions for the position you apply for, and no other disqualifying employment requirements, you will be considered for rehire.

Exhibit I, Defs.' Motion.

In response, Frazier references her release to return to work by Dr. John O. Lytle.  As discussed in the court's order on the first motion for summary judgment, on June 12, 2008, Dr. Lytle completed a Return to Work Certificate stating that Frazier could return to regular work with no limitations on June 23, 2008.  *See* Exhibit 1, Certificate, plaintiff's response to defendants' first motion for summary judgment (Doc. No. 33-2) ("pltf.'s resp.").  On June 26, 2008, Dr. Lytle completed an Essential Job Function Questionnaire indicating that Frazier had no limitations.  Exhibit 1, Questionnaire, pltf.'s resp.  It is clear, however, that Dr. Lytle was treating Frazier for her physical injury sustained on April 16, 2008, not for her mental or emotional problems.  Frazier also states that the Catastrophic Leave Committee denied her request for extended and extraordinary leave, yet she was purportedly terminated because she was not fit to return to work. Frazier provides no evidence that she was mentally fit to return to work.

14

After a thorough review of the record, the court finds that defendants have offered a legitimate, nonretaliatory reason for its actions, Frazier has failed to present any evidence that the explanation given is pretextual.  Thus, even assuming Frazier could establish a prima facie case of retaliatory suspension and discharge, the court finds that summary judgment is appropriate as to these claims.

## C.   Remaining Title VII Claims Against ADC

To the extent that Frazier's complaint could be construed to allege claims of race discrimination, hostile work environment sexual harassment, or quid pro quo sexual harassment pursuant to Title VII against ADC, those claims are clearly barred.  In order to initiate a Title VII claim, a party must timely file a charge of discrimination with the EEOC and receive a right-to-sue letter. *Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000).

The EEOC charges of discrimination contained in the record allege only retaliation. The EEOC charge of discrimination dated August 7, 2006, only checks the box marked "retaliation" and alleges:

> I was hired on December 15, 2003 as a security officer.  On May 8, 2006, I filed a complaint of sexual harassment with my employer.  Between July 3 and July 17, 2006, I was posted at a tower that I had reported gas fumes emanating from.
>
> I was told by my supervisor that he could not smell anything.
>
> I believe I was posted at the tower in retaliation for filing a complaint of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

Exhibit A, Exhibit 6 to Frazier Dep., defs.' first motion for summary judgment.  The EEOC

charge of discrimination dated July 7, 2008, only checks the box marked "retaliation" and

alleges:

> I was hired on or about December 15, 1987 as a Correctional Officer.  In August of 2006, I filed an EEOC complaint and I am currently in Federal Court in regard to the complaint.  On April 16, 2008, I had a work related injury and was placed on medical leave.  On or about June 16, 2008, I was released to return to work by my doctor.  On June 19, 2008, I was told that I could not return to work.
>
> I was told by the warden that I could not return to work because I had threatened to harm my supervisor.  The Warden also requested that a doctor that I had seen previously for an unrelated ailment provide a statement in regard to my fitness to return to work.
>
> I believe I was suspended from work in retaliation for filing a charge with the EEOC in violation of Title VII of the Civil Rights Act of 1964, as amended.

Exhibit B, defs.' motion.

"Although a plaintiff will be deemed to have exhausted administrative remedies as to

allegations contained in a judicial complaint that are like or reasonably related to the

substance of charges timely brought before the EEOC, it is well established that retaliation

claims are not reasonably related to underlying discrimination claims." *Wallin v. Minnesota

Dep't of Corrs.*, 153 F.3d 681, 688 (8th Cir. 1998).  The court finds no indication in the

record that Frazier filed a charge of discrimination or received a right to sue letter with regard

to any claims of race discrimination, hostile work environment sexual harassment, or quid

pro quo sexual harassment pursuant to Title VII.  Therefore, to the extent these claims are

asserted, they are dismissed.

**D.**    **42 U.S.C. § 1983 Claims for Procedural Due Process Violations, Race Discrimination, and for Injunctive Relief against Defendant Moore**

Defendants assert that Moore is the only defendant subject to suit under 42 U.S.C. § 1983, and Frazier cannot maintain her claims for procedural due process violations, race discrimination, or injunctive relief because defendant Moore was not responsible for her termination and has no authority to take any adverse employment action against her. Furthermore, defendants assert that none of the events Frazier alleged as racially discriminatory were attributed to Moore, and Moore was not responsible for protecting any rights to due process that Frazier may have had.

Frazier admits that Moore "did not formally suspend or fire" her.  Frazier contends, however, that Moore's conduct caused her to resort to the EEOC process, Moore instigated a hostile work environment, and her suspension and termination occurred to protect Moore. Thus, Frazier asserts that Moore is liable for the damages.

The court agrees that the record indicates that defendant Moore was not responsible for her termination; Moore has no authority to suspend or terminate her; none of the alleged racially discriminatory events were directly attributed to Moore; and Moore was not responsible for protecting any rights to due process that Frazier may have had.  Frazier does not provide any evidence to the contrary.  As Frazier is no longer an employee at ADC, and she makes no argument that Moore has continued to harass her since her termination, there is no ongoing action to enjoin.  Further, to the extent that the injunctive relief sought is

reinstatement, defendant Moore, a sergeant for the Diagnostic Unit, is not in a position to reinstate Frazier.  Therefore, summary judgment is appropriate as to Frazier's 42 U.S.C. §§ 1981 and 1983 and parallel ACRA claims for procedural due process violations, race discrimination, or injunctive relief against Moore in his official and individual capacities.[3]

**E.     42 U.S.C. § 1983 Claim for Injunctive Relief against Defendant West**

To the extent the court allowed Frazier's claims for injunctive relief under 42 U.S.C. §§ 1981 and 1983 and parallel ACRA claims against defendant Christopher West, in his official capacity, to proceed, summary judgment is clearly appropriate and West should be dismissed from this lawsuit.  Defendants state, and Frazier does not dispute, that West has never been served.  Furthermore, in its order on the first motion for summary judgment, Frazier admitted that West was her co-worker, and never served as Frazier's supervisor.  It is clear that defendant West is not in a position to reinstate Frazier.  Defendant West is dismissed from this lawsuit.

**F.     HIPAA Claim**

Defendants assert that they are not covered entities subject to HIPAA and there is not private cause of action for a violation of HIPAA.  Although Frazier asserts that defendants cite no law in support of their assertion, defendants have clearly done so.  In *Acara v. Banks*,

---

[3] Although defendants make identical arguments with regard to gender discrimination, the court dismissed Frazier's gender discrimination claims in its order on the first motion for summary judgment.

470 F.3d 569, 571-72 (5th Cir. 2006), the Fifth Circuit held that "Congress did not intend for private enforcement of HIPAA," and "[e]very district court that has considered this issue is in agreement that the statute does not support a private right of action." (citing cases). *See also Bradford v. Blake*, 2006 WL 744307, *3 (E.D. Mo. Mar. 23, 2006) (holding that HIPAA creates no private right of action enforceable under 42 U.S.C. § 1983) (citing cases). The court agrees with the conclusion of the Fifth Circuit and many other district courts. Furthermore, Frazier provides no authority to the contrary. Because there is no private cause of action under HIPAA, there is no federal subject matter jurisdiction over Frazier's asserted HIPAA claim, and summary judgment is appropriate.

**G.     State Law Claims against Defendant ADC**

Defendants assert that all of Frazier's state law claims against ADC are barred by state sovereign immunity. Frazier provides no legal support in opposition. Frazier, however, concedes that she has no valid claim for defamation or invasion of privacy. Frazier's claims for defamation and invasion of privacy are dismissed. As to the remaining state law claims, the court agrees that Frazier's state law claims against ADC are barred by sovereign immunity. *See Fegans v. Norris*, 351 Ark. 200, 206-07 (2002); *Grine v. Bd. of Trustees*, 338 Ark. 791, 796 (1999); *Brown v. Arkansas State HVACR Lic. Bd.,* 336 Ark. 34, 37-38 (1999). Frazier's state law claims against ADC are dismissed.

## V.  CONCLUSION

In conclusion, summary judgment is granted as to:

(1) Frazier's claims pursuant to 42 U.S.C. §§ 1981 and 1983 and parallel ACRA claims against defendant ADC;

(2) Frazier's Title VII, 42 U.S.C. § 1983 and parallel ACRA retaliation claims with regard to her suspension and termination;

(3) Frazier's Title VII claims for race discrimination, hostile work environment sexual harassment, and quid pro quo sexual harassment against ADC;

(4) Frazier's claims under 42 U.S.C. §§ 1981 and 1983 and parallel ACRA provisions for procedural due process violations, race discrimination, and injunctive relief against defendant Moore in his official and individual capacities;

(5) Frazier's claims under 42 U.S.C. §§ 1981 and 1983 and parallel ACRA provisions for injunctive relief against Christopher West, in his official capacity;

(6) Frazier's HIPAA claim;

(7) Frazier's defamation and invasion of privacy claims; and

(8) Frazier's remaining state law claims against ADC.

Frazier's remaining claims are as follows:

(1) Frazier's 42 U.S.C. § 1983 quid pro quo sexual harassment and parallel ACRA claims against defendant Moore in his individual capacity;

(2) Frazier's 42 U.S.C. § 1983 and parallel ACRA hostile work environment sexual harassment claims against defendant Moore in his individual capacity;

(3) Frazier's 42 U.S.C. § 1983 substantive due process claim against defendant Moore in his individual capacity; and

(4) Frazier's claim of outrage arising from the alleged incidents with Troy Moore against defendant Moore in his individual capacity.

Accordingly, defendants' second motion for summary judgment (Docket No. 51) is granted as stated herein.   Defendants Christopher West and Arkansas Department of Correction are dismissed from this lawsuit.

IT IS SO ORDERED this 30th day of March, 2009.

20

UNITED STATES DISTRICT JUDGE